# In the United States Court of Federal Claims

No. 10-397
(Filed: September 23, 2011)
**NOT FOR PUBLICATION**

|  |  |
|---|---|
| WAYNE A. ROBINSON, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

Jason E. Perry, Cheshire, Connecticut, for plaintiff.

Jessica A. Toplin, Trial Attorney, Steven J. Gillingham, Assistant Director, Jeanne Davidson, Director, Civil Division, Commercial Litigation Branch, Tony West, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  Captain John Geohring, Air Force Civil Litigation, Arlington, Virginia, of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

Wayne A. Robinson has filed a complaint against the United States alleging wrongful discharge from the Air Force (docket entry 1, June 28, 2010).  Under the Military Pay Act, 37 U.S.C. § 204, plaintiff seeks restoration to active duty status until he is processed through the Disability Evaluation System ("DES"), pay and allowances lost by reason of his alleged wrongful discharge, payment of out-of-pocket expenses for medical care, and an award of costs and attorney's fees.  Pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), defendant filed a motion to dismiss this action, arguing that plaintiff's claims are nonjusticiable[1] and moved in the alternative for judgment on the administrative record pursuant

---

[1] Although defendant moves for dismissal pursuant to RCFC 12(b)(6), some authority suggests that a nonjusticiable claim should be dismissed on jurisdictional grounds pursuant to RCFC 12(b)(1).  *See BLR Grp. of Am., Inc. v. United States*, 94 Fed. Cl. 354, 361 & n.5 (2010) (discussing whether nonjusticiable claims should be dismissed for lack of jurisdiction or for failure to state a claim).  Here, defendant asserts that plaintiff's claims are "beyond the Court's authority for review," Def.'s Mot. to Dismiss 7 (docket entry 20, Jan. 25, 2011), which suggests defendant seeks to dismiss for lack of jurisdiction rather than failure to state a claim.  Because

to RCFC 52.1.  Plaintiff subsequently filed a cross-motion for judgment on the administrative record (docket entry 24, Feb. 25, 2011).  For the reasons set forth below, the Court **DENIES** defendant's motion to dismiss pursuant to RCFC 12(b)(6), **DENIES** plaintiff's cross-motion for judgment on the administrative record, and **GRANTS** defendant's motion for judgment on the administrative record.

### I.    Background

Plaintiff joined the United States Air Force in 1970 and served at various times on active duty and as a reservist.  Compl. ¶ 6.  In 1985, plaintiff reenlisted in the Air Force Reserves, and, in July 2001, he was transferred to the 137th Airlift Squadron in Newburgh, New York.  *Id.* ¶¶ 7–8.  Plaintiff was serving on active duty when, on March 3, 2007, he injured his shoulder and back while lifting a child out of an aircraft cockpit during an official tour for civilians of the unit's aircraft and facilities.  Administrative R. ("AR") 37, 44 (docket entry 18, Jan. 21, 2011).

Soon after his injury, plaintiff's primary care provider, Saratoga Family Medical Practice, referred him to a spine specialist.  AR 44.  On March 22, 2007, the spine specialist, Dr. Joseph LaRosa of Orthopedic Associates of Saratoga, referred plaintiff to a physical therapist, who treated plaintiff for approximately one month.  AR 40–41.  On April 5, 2007, just over a month after the injury, Dr. LaRosa reported that plaintiff's "examination today is normal" and "[t]he patient is certainly fit to fly."  AR 38.

Despite Dr. LaRosa's diagnosis, on June 5, 2007, New York State Air Surgeon Colonel Reid Muller instructed Captain Martin Stallone, plaintiff's profile officer, to refer plaintiff to the DES.  Compl. Ex. 1, at 6.  The DES process entails an initial hearing before a Medical Evaluation Board ("MEB"), a "[p]hysical disability evaluation by [a] Physical Examination Board," counseling, and a final disposition by an authorized person.  Department of Defense Instruction ("DODI") 1332.38 para. E3.P1.1 (Nov. 14, 1996); *see also* Air Force Instruction ("AFI") 41-210 para. 10.1.1 (Mar. 22, 2006) ("The MEB is the first step in the Air Force disability evaluation process to determine who is not worldwide qualified.").

On August 2, 2007, Captain Stallone determined that plaintiff's pinched shoulder nerve occurred in the line of duty.  AR 44–45.  Captain Stallone also completed plaintiff's Physical Profile Serial Report ("Physical Report").  AR 27.  In the report, based on the PULHES[2] ranking system, Captain Stallone recorded a temporary upper-extremity rating of 4T, AR 27, indicating an injury affecting "[s]trength, range of motion, and general efficiency of hand, arm, shoulder girdle, and back includ[ing] cervical and thoracic spine."  AFI 48-123v.4 Attach. 4 (June 5, 2006).  The T indicated that he was "temporarily not qualified for retention or [was] undergoing an MEB to determine fitness."  AFI 48-123v.2 para. 4.5.6.4.2 (June 5, 2006).

---

the Court concludes that plaintiff's claims are justiciable, the Court need not further consider the proper procedural basis for dismissal.  *See BLR Grp. of Am. Inc.*, 94 Fed. Cl. at 361.

[2] PULHES is a physical profiling system that rates individuals on a numerical scale from one to four in the following categories:  Physical capacity, Upper extremities, Lower extremities, Hearing and ear, Eyes, and Psychiatric.  *See* AFI 48-123v.4 Attach. 4.

Pursuant to DES protocol, Captain Stallone then referred plaintiff to an MEB. AR 27. Because plaintiff's active duty status was set to expire on October 1, 2007, AR 46, 49, the Air Force placed plaintiff in the Medical Continuation Program, AR 46, which allows reserve and guard members who are receiving treatment for injuries incurred or aggravated in the line of duty to remain on active duty on medical continuation status. *See* 10 U.S.C. § 12301(h); DODI 1241.2 para. 6.6.1 (May 30, 2001). The Air Force Medical Operations Agency ("Medical Operations") administers the Medical Continuation Program. *See* Supplemental ("Suppl.") AR[3] Ex. 2, at 1–2.

After almost one year on medical continuation status, plaintiff received a diagnosis from Dr. LaRosa on September 9, 2008, which stated, "Pinched nerve resolved[,] the prognosis is normal function." AR 4–5. Then, on September 10, 2008, Lieutenant Colonel ("Lt. Col.") Eric Wittmann, plaintiff's new profile officer, updated plaintiff's PULHES profile to reflect a new upper extremity rating of 1. Suppl. AR Ex. 1, Attach. 1. That rating replaced the 4T rating and meant that plaintiff was fit for duty. *Id.* For upper extremities, a 1 indicates that "bones, joints, muscles [are] normal" and that members are capable of hand-to-hand fighting. AFI 48-123v.4 Attach. 4. Due to the determination that plaintiff was fit for duty and the resolution of his temporary 4T status, Medical Operations did not renew plaintiff's medical continuation status, which expired on September 10, 2008, AR 53, resulting in the expiration of plaintiff's active duty status.

Plaintiff filed his complaint in this court on June 28, 2010. He alleges that the Air Force's failure to conduct an MEB hearing violated Air Force Instructions. Compl. ¶ 11 (citing AFI 48-123v.2). Plaintiff further alleges that his discharge on September 10, 2008, was wrongful because the governing statutes and Air Force Instructions required that he remain on active duty until he was fully processed through the DES, which required an MEB hearing. *Id.* ¶ 14. He also alleges that the Air Force acted arbitrarily and capriciously by failing to consider various other alleged medical ailments when it determined that he was no longer qualified for medical continuation status. *Id.* ¶ 11 (alleging plaintiff suffered orthopedic problems, hypertension, a hiatal hernia, and aortic aneurysm, all of which he incurred in the line of duty). As a result, plaintiff requests restoration to active duty until the DES process is completed; lost pay and allowances due to his having been improperly removed from medical continuation status

---

[3] On June 27, 2011, having determined that meaningful review of the Air Force's action was impossible given the then-existing administrative record, the Court *sua sponte* ordered supplementation (docket entry 31). In so doing, the Court exercised its authority to "obtain from the agency . . . such additional explanations of the reasons for the agency decision as may prove necessary." *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973) (holding that a court may look outside of the administrative record where "there was such failure to explain administrative action as to frustrate effective judicial review"); *accord Walls v. United States*, 582 F.3d 1358, 1367–68 (Fed. Cir. 2009) (noting that the administrative record of agency action may be supplemented "if the existing record is insufficient to permit meaningful review" (quoting *Axiom Res. Mgmt. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (internal quotation marks omitted))); *see also WildWest Inst. v. Bull*, 547 F.3d 1162, 1176 (9th Cir. 2008) ("We may consider extra-record materials . . . when necessary to determine whether the agency considered all relevant factors in making its decision; . . . [or] when necessary to explain . . . complex subject matter . . . .").

and from active duty; and payment of out-of-pocket expenses for medical care. *Id.* ¶¶ 17–18, Prayer for Relief ¶¶ a–e.

## II. Legal Standard

### A. Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Disputed issues are construed favorably to the [plaintiff]." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993) (citing *United States v. Mississippi*, 380 U.S. 128, 143 (1965)). A plaintiff must present a claim that a court "can finally and effectively decide, under tests and standards which [a court] can soundly administer within [its] special field of competence." *Sargisson v. United States*, 913 F.2d 918, 922 (Fed. Cir. 1990) (quoting *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988)) (internal quotation marks omitted). When a plaintiff's claim is nonjusticiable, it must be dismissed. *See supra* note 1.

Although a determination of an individual's fitness to serve may be nonjusticiable in most cases, "a challenge to a particular procedure followed by the military in rendering a decision may present a justiciable issue." *Fisher v. United States*, 402 F.3d 1167, 1177 (Fed. Cir. 2005) (non-en banc portion). The military is bound to abide by its own procedures. *Id*. Accordingly, "[a] court may decide whether the military has complied with procedures set forth in its own regulations because those procedures by their nature limit the military's discretion." *Id*. In keeping with this standard, a court may not substitute its own judgment for that of the military, especially when addressing "the basic question of an individual's eligibility to serve the nation as a war fighter." *Id.* at 1180; *see also Adkins v. United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995) ("[A]lthough the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy.").

### B. Motion for Judgment on the Administrative Record

Pursuant to RCFC 52.1, judgment on the administrative record "is akin to an expedited trial on the record and has no counterpart in the Federal Rules of Civil Procedure." *Bannum, Inc. v. United States*, 96 Fed. Cl. 364, 379 (2010). Unlike Rule 56 of the Federal Rules of Civil Procedure, a dispute over a material fact does not prevent the Court from granting a motion for judgment on the administrative record. *Id.* at 380. Instead, the Court determines whether "a party has met its burden of proof based on the evidence in the record." *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum*, 404 F.3d at 1356).

To meet his burden, plaintiff must establish by reference to the administrative record that the action of the Air Force was "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005)). Courts defer to agency decisions and will not "disturb the decision" unless it falls within one of the four categories

described in the cases cited. *Id*. Thus, the Court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Robbins v. United States*, 29 Fed. Cl. 717, 725 (1993) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys. Inc.*, 419 U.S. 281, 285 (1974)) (internal quotation marks omitted).

Plaintiff bears the burden of overcoming the "'strong, but rebuttable, presumption' that the military discharges its duties 'correctly, lawfully, and in good faith.'" *Bernard v. United States*, 59 Fed. Cl. 497, 501 (2004) (quoting *Hary v. United States*, 618 F.2d 704, 707 (Ct. Cl. 1980)); *accord Richey v. United States*, 322 F.3d 1317, 1326 (Fed. Cir. 2003) (noting "the presumption of regularity that attaches to all administrative decisions" of the United States).

**III.   Discussion**

In analyzing plaintiff's action, the Court first determines whether the claims are justiciable. If so, the Court will consider whether the Air Force acted arbitrarily, capriciously, without substantial evidence, or contrary to law when it did not renew plaintiff's medical continuation status, resulting in his removal from active duty, which is the basis for plaintiff's wrongful discharge claim.

   A.   *Plaintiff's Claims are Justiciable*

Defendant first argues that this action should be dismissed pursuant to RCFC 12(b)(6) for failure to state a justiciable claim upon which relief can be granted. Def.'s Mot. to Dismiss 7; *see also supra* note 1. Defendant contends that plaintiff is challenging the Air Force's determination that he is fit for duty and that this determination is not subject to judicial review. Def.'s Mot. to Dismiss 7. Plaintiff argues that his claims are justiciable because he does not challenge the substance of the fitness determination. Pl.'s Opp'n to Mot. to Dismiss 6 (docket entry 24, Feb. 26, 2011). Instead, plaintiff claims the Air Force either failed to follow its own regulations and procedures in determining his fitness for duty or that the Air Force's decision finding him fit for duty was arbitrary and capricious. *Id.* (citing *Fisher*, 402 F.3d at 1177).

Defendant implies that the Court cannot grant relief to plaintiff without addressing the merits of plaintiff's fitness determination. Def.'s Mot. to Dismiss 7–8. But that argument—that plaintiff "is challenging the substance of the Air Force's decision" because "the Air Force followed all applicable regulations when it discontinued [plaintiff's] medical continuation," *id.* at 8—assumes the key issue in this case, *i.e.*, whether the Air Force did, in fact, correctly follow its own procedures.

Plaintiff's complaint and response brief in opposition to defendant's motion to dismiss assert only that the Air Force did not follow its own regulations and procedures and that this failure entitles him to relief. Compl. ¶¶ 11, 14; Pl.'s Opp'n to Mot. Dismiss 6 ("[T]his case is about the failure of the Air Force to follow proper procedures in making a fitness determination."). Plaintiff does not ask the Court to review the merits of the Air Force's decision to discontinue plaintiff's medical continuation status. Rather, plaintiff asks the Court to assess the Air Force's actions in light of the Air Force's own regulations and procedures. That assessment can be accomplished without addressing the merits of the fitness determination. Accordingly, defendant's motion to dismiss for failure to state a justiciable claim must fail.

5

> B. *The Air Force's Decision to Discontinue Plaintiff's Medical Continuation Status Was Not Arbitrary, Capricious, Unsupported by Substantial Evidence, or Contrary to Law*
>
>> 1. The Air Force's Decision to Discontinue Plaintiff's Medical Continuation Status Was Not Contrary to Law

The Air Force's decision to discontinue plaintiff's medical continuation status was not contrary to law because an authorized officer found him fit for duty when the officer removed plaintiff's 4T designation, thereby "clearing" his physical profile. After plaintiff received a 4T profile rating from the injuries he incurred in the line of active duty, Air Force Instructions required that he remain on medical continuation status until one of two events occurred: (1) he was processed through the DES (including the initial MEB hearing); or (2) his profile was "resolved," *i.e.*, his profile officer removed the 4T designation and found him fit for duty. AFI 48-123v.2 para. 4.6.2 ("[Air National Guard members] with a 4T profile incurred in the line of duty will be retained on military orders until the profile is resolved or the member is processed through the DES."); Suppl. AR Ex. 2, Attach. 5 ("Active duty orders will be continued until the Airman is returned to duty or processed through the DES.").

A 4T designation does not necessarily entitle a service member to an MEB hearing. *See Childers v. United States*, 81 Fed. Cl. 693, 698, 721 (2008). In *Childers*, a service member received a 4T in the Physical category of her PULHES report and was initially referred to the MEB for a hearing. *Id.* at 698. However, her original diagnosis, which triggered the 4T profile, was subsequently updated. *Id.* at 718. The plaintiff's updated diagnosis provided "no suggestion that she was not fit to continue her military duties," *id.*, a suggestion that would necessitate an MEB hearing. *See* Suppl. AR Ex. 2, Attach. 6, at 16 ("The MEB is the first step in the Air Force [DES] process to determine suitability for continued military duty."); *cf. Childers*, 81 Fed. Cl. at 704–05 (noting that the existence of "severe or grave medical conditions" could "require[] that [a person] be presented before an MEB"). Accordingly, the court in *Childers* found that the plaintiff's original 4T designation and MEB referral did not entitle her to an MEB hearing after her medical records were updated to reflect the correct diagnosis and she was determined to be fit for duty. *Id.* at 718–19.

Here, plaintiff alleges that the Air Force violated its own regulations and procedures by failing to initiate an MEB hearing after the New York State Air Surgeon referred him to the DES. Compl. ¶ 11. Plaintiff claims that once he was referred to the DES, his medical continuation status could end lawfully only through completion of the DES process (including the initial MEB hearing) and a final finding of fitness by the Medical Standards Branch.[4] Pl.'s Sur-Reply 6 (citing AFI 41-210 para. 10.1.5.1) (docket entry 30, Apr. 19, 2011). However, plaintiff was not entitled to an MEB hearing simply because he was assigned a 4T profile and

---

[4] The "Medical Standards Branch" is the Headquarters, Air Force Personnel Center, Directorate of Assignments, Medical Service Officer Management Division, Medical Standards Branch (HQ AFPC/DPAMM). *See* AFI 36-2009 para. 1.6.1 (June 1, 1999).

referred to an MEB by Captain Stallone.[5]  On September 10, 2008, Lt. Col. Wittmann resolved plaintiff's 4T profile, Suppl. AR 55, which meant plaintiff was fit for duty, no longer needed an MEB, and was no longer eligible for medical continuation status.[6]

Because plaintiff's profile had already been resolved when Medical Operations declined to renew his medical continuation status, *see id.*, the Air Force complied with its own regulations and procedures.  Plaintiff has therefore failed to meet his burden to demonstrate how the Air Force's decision not to renew his medical continuation status was contrary to law.

### 2. The Air Force Was Not Required to Review Additional Medical Records

Plaintiff also claims that the Air Force did not adequately consider his entire medical history when it decided to terminate his medical continuation status and that its failure to do so was arbitrary and capricious.  Pl.'s Opp'n to Mot. to Dismiss 13.  Plaintiff does not assert an entitlement to disability retirement benefits.  *See* Status Conference at 3:04:44, Robinson v. United States, No. 10-397 (Dec. 7, 2010).  The issue is whether the Air Force properly followed its own regulations and procedures when it removed plaintiff from medical continuation status. *Loomis v. United States*, 68 Fed. Cl. 503, 508 (2005).  Here, plaintiff has not identified any Air Force Instructions that would have required the Air Force to consider additional medical records when deciding to remove plaintiff from medical continuation status.  Rather, the Air Force Instructions require only that the Air Force either resolve the temporary disability or complete DES processing, neither of which mandates review of additional medical records.  *See* AFI 48-123v.2 para. 4.6.2.  Thus, the Air Force did not act in an arbitrary or capricious manner in connection with its review of plaintiff's medical records.

Similarly, the Air Force's decision to take plaintiff off medical continuation status was not arbitrary or capricious.  Plaintiff was on medical continuation status only because he had a pinched nerve in his shoulder.  *See* AR 4.  The various other medical ailments alleged by plaintiff had no bearing on whether he qualified for medical continuation status.  Once Lt. Col. Wittmann received a diagnosis from plaintiff's primary healthcare provider stating that

---

[5] Plaintiff claims that Senior Master Sergeant ("SMSgt") Connie Rubio of Medical Operations exceeded her authority in finding him "fit for duty" by resolving his 4T profile and failing to extend his medical continuation.  However, as evidenced by plaintiff's medical records, it was not SMSgt Rubio but rather Lt. Col. Wittmann, Robinson's profile officer, who resolved his profile and found him fit for duty.  *See* Suppl. AR 55.

[6] The Air Force Instructions required that the Air Force terminate plaintiff's medical continuation status once his 4T profile was resolved.  AFI 48-123v.2 para. 4.6.2; DODI 1241.2 para. 6.3.3.1 (requiring that medical continuation "shall terminate on the date that . . . [t]he member is found fit for duty").  As plaintiff concedes in his sur-reply brief, profile officers have the authority to find members fit for duty.  Pl.'s Sur-Reply 4 (citing AFI 10-203 para. 2.9.4 (June 25, 2010)).  If a profile officer finds that a member's temporary condition is no longer impeding his military fitness, then the profile officer has the authority to change the member's PULHES profile to reflect the resolution of the temporary condition and the soldier's fitness for duty.  AFI 10-203 paras. 2.12.5, 2.12.6.

7

plaintiff's pinched nerve was resolved, he had the authority to update plaintiff's 4T profile and find him fit for duty.  *Cf.* AFI 10-203 para. 2.12.6 (allowing profile officers to supersede healthcare provider recommendations, but requiring the officers to send an explanation to the provider).  Plaintiff has failed to demonstrate that the Air Force violated its own regulations or procedures or acted arbitrarily or capriciously in terminating his medical continuation status.

## CONCLUSION

In light of the foregoing, the Court concludes that plaintiff's action is justiciable, and the Court therefore **DENIES** defendant's RCFC 12(b)(6) motion to dismiss for failure to state a justiciable claim.  The Court further concludes that plaintiff has failed to meet his burden to demonstrate that the Air Force acted arbitrarily, capriciously, without substantial evidence, or contrary to law in determining that plaintiff was ineligible for further medical continuation status after his physician reported that the pinched nerve in his shoulder was resolved, with the result that plaintiff's active duty status expired.  The Court therefore **GRANTS** defendant's motion for judgment on the administrative record and **DENIES** plaintiff's cross-motion for judgment on the administrative record.  The Clerk shall enter judgment for defendant.

**IT IS SO ORDERED.**

 s/ George W. Miller
GEORGE W. MILLER
Judge